UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NUNZIO CALCE; ALLEN CHAN; SHAYA GREENFIELD; AMANDA KENNEDY; RAYMOND PEZZOLI; SECOND AMENDMENT FOUNDATION; and FIREARMS POLICY COALITION, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> CITY OF NEW YORK; and EDWARD A. CABAN, in his official capacity as Commissioner of the New York City Police Department, <br><br> Defendants. | No. 21-cv-8208 (ER) |

## **DECLARATION OF NUNZIO CALCE**

I, Nunzio Calce, declare as follows:

1. I am a plaintiff in this case. I am over 18 years of age and am competent to testify on my own behalf.

2. I am 50 years old and married. I have two sons, aged 13 and 10. I live in Bronx, New York.

3. I would like to buy and keep both a Taser and a stun gun for the purpose of protecting myself and my family, both at home and away from home.

4. I understand that a stun gun is an electrical weapon that works by administering a shock when placed in contact with a person and activated. A Taser works the same way, and it can also shoot a pair of electrical contacts to administer a shock from a few feet away. I reviewed footnote 2 in Justice Alito's concurring opinion in *Caetano v. Massachusetts*, 577 U.S. 411 (2016), and it is the same as my own understanding. That footnote reads:

> Stun guns like Caetano's "are designed to stun a person with an electrical current" by running a current between two metal prongs on the device and placing the prongs in direct contact with the person. 470 Mass. 774, 775, n. 2, 26 N. E. 3d 688, 689, n. 2 (2015). A similar device, popularly known by the brand name "Taser," shoots out wires tipped with electrodes that can deliver an electrical current from a distance. Tr. 25–26. Tasers can also be used like a stun gun without deploying the electrodes—a so-called "dry stun." *Id.*, at 26.

5.  The reasons that I would like to have both a stun gun and a Taser are many:

   5a. First and foremost, as a U.S. Citizen, I have an Inalienable, Individual Right under The Second Amendment of the U.S. Constitution to keep and bear arms, and Stun guns and Tasers have been ruled to be Protected Arms under the Second Amendment in Caetano v. Massachusetts.

   5b. Enshrined within my Individual Second Amendment Right is my basic right to self-defense, per the Heller v. D.C. ruling. Stun guns and Tasers are in widespread use throughout the U.S. for non-lethal self-defense purposes by both thousands of police departments as well as by civilians, for a plethora of reasons, ranging from dependability, to convenience in carrying, to economical cost, to ease of use, to a desire to deploy the minimum amount of force necessary, etc etc. My desire and choice to use a non-lethal device such as a stun gun or a Taser for self-defense if/when available, and I deem appropriate, rather than only a lethal implement, should be available to me.

   5c. To expand upon the self-defense point: I believe that stun guns and Tasers are important alternatives to firearms in certain situations and locations. For example, there are locations where firearms may be prohibited, such as in certain private business establishments, while non-lethal devices are permitted. In such cases, stun guns and Tasers provide at least some level of self-defense ability, with Tasers providing an added security of often being able to maintain some distance from an attacker, as opposed to a

stun gun.  They are also much less likely to injure innocent bystanders and / or other victims, as opposed to both firearms and pepper spray, which are not ideal in crowded areas, nor in certain climates / weather conditions in the case of pepper spray.  As per the Notes section of Justices Alito's & Thomas' concurrence of the Caetano case (https://supreme.justia.com/cases/federal/us/577/411/#annotation), "A spray can also be foiled by a stiff breeze, while a stun gun cannot."

      5d.     I believe that the reasons stated above provide more than ample justification to support my desire to legally obtain a stun gun and a Taser. In summary, and most importantly, it is my Constitutionally Protected Individual Right, upheld by the United States Supreme Court in several rulings.  This ban is depriving U.S. Citizens of their Constitutionally Protected Individual Rights, and I am of the belief that deprivation of Constitutionally Protected Rights causes irreparable harm.

      6.     It is my understanding that state law prohibits the possession of Tasers, and that both state law and New York City law prohibit the possession of stun guns. It is also my understanding that the New York City Police Department enforces these laws.

      7.     On September 7, 2021, I called my local NYPD precinct (49th) in the Bronx and asked whether it was lawful for me to have a stun gun or a Taser in New York City. Someone named "Officer Ju" told him that both stun guns and Tasers are illegal in all of New York City. Officer Ju also told me that his superiors would say the same thing, and that any superior officer at any other NYPD precinct would also say the same thing.

      8.     The call I placed to the NYPD precinct confirmed my previous understanding that Tasers and stun guns are illegal in New York City, and that NYPD officers will take action

against individuals they find to be in possession of stun guns or Tasers. Nothing has happened since I placed the phone call in September 2021 to change this understanding.

9. Because I understand that NYPD officers would charge me with unlawfully possessing a stun gun or a Taser if they found me in possession of one, I refrain from buying, possessing, or carrying a stun gun or a Taser.

10. I have never been convicted of a felony or confined to a mental institution. To the best of my knowledge, I am legally eligible to purchase and possess firearms under New York law and federal law.

11. I am a member of the Second Amendment Foundation and the Firearms Policy Coalition, which I understand are also plaintiffs in this case.

I affirm all of the foregoing statements under penalty of perjury under the laws of the United States of America.

Dated: February 29, 2024

_____
Nunzio Calce