# CHAPTER 217

Cal. No. 492        7151-A

# IN SENATE

### (Prefiled)

### January 7, 1976

Introduced by Sen. CAEMMERER—read twice and ordered printed, and when printed to be committed to the Committee on Codes—reported favorably from said committee with amendments and ordered reprinted as amended and when reprinted to be committed to the order of first report

# AN ACT

to amend the penal law, in relation to criminal possession of electronic dart guns

Compared by _Walter Nebres_

Approved

1976

# SENATE

The Senate Bill
by Mr. CAEMMERER     Calendar No. _492_

Senate No. _7151-A_
Assem. Rept. No. _____

Entitled: "

7151-A

MR. CAEMMERER
AN ACT TO AMEND THE PENAL LAW,
IN RELATION TO CRIMINAL POSSES-
SION OF ELECTRONIC DART GUNS

" was read the third time

The President put the question whether the Senate would agree to the final passage of said bill, the same having been printed and upon the desks of the members in its final form at least three calendar legislative days, and it was decided in the affirmative, a majority of all the Senators elected voting in favor thereof and three-fifths being present, as follows:

| AYE | Dist. | | NAY | AYE | Dist. | | NAY |
|-----|-------|-----------------|-----|-----|-------|-----------------|-----|
| | 47 | Mr. Anderson | | | 29 | Mr. Leichter | |
| | 49 | Mr. Auer | | | 8 | Mr. Levy | |
| | 45 | Mr. Barclay | | | 22 | Mr. Lewis | |
| | 18 | Mr. Bartosiewicz | | | 50 | Mr. Lombardi | |
| | 23 | Mr. Beatty | EXCUSED | | 24 | Mr. Marchi | |
| | 25 | Ms. Bellamy | | | 5 | Mr. Marino | |
| | 33 | Mr. Bernstein | | | 48 | Mr. Mason | |
| | 19 | Mr. Bloom | | | 28 | Mr. McCall | |
| | 12 | Mr. Bronston | | | 59 | Mr. McFarland | |
| | 9 | Ms. Burstein | | | | ▬▬▬▬▬ | |
| | 7 | Mr. Caemmerer | | | 42 | Mr. Nolan | |
| | 34 | Mr. Calandra | | | 27 | Mr. Ohrenstein | |
| | 21 | Mr. Conklin | | | 17 | Mr. Owens | |
| | 46 | Mr. Donovan | | | 11 | Mr. Padavan | |
| | 6 | Mr. Dunne | | | 60 | Mr. Paterson | |
| | 54 | Mr. Eckert | | | 53 | Mr. Perry | |
| | 35 | Mr. Flynn | | | 36 | Mr. Pisani | |
| | 32 | Mr. Galiber | | | 57 | Mr. Present | |
| | 30 | Mr. Garcia | | | 39 | Mr. Rolison | |
| | 14 | Mr. Gazzara | | | 31 | Mr. Ruiz | |
| | 1 | Mr. Giuffreda | | | 10 | Mr. Santucci | |
| | 13 | Mr. Gold | | | 40 | Mr. Schermerhorn | |
| | 26 | Mr. Goodman | | | 2 | Mr. Smith, B. C. | |
| | 37 | Mr. Gordon | | | 51 | Mr. Smith, W. T. | |
| | 56 | Mr. Griffin | | | 43 | Mr. Stafford | |
| | 20 | Mr. Halperin | | | 55 | Mr. Tauriello | |
| | 41 | Mr. Hudson | | | 3 | Mr. Trunzo | |
| | 44 | Mr. Isabella | | | 58 | Mr. Volker | |
| | 4 | Mr. Johnson | | | 52 | Mr. Warder | |
| | 15 | Mr. Knorr | | | 38 | Mrs. Winikow | |

AYES. _58_

NAYS. _0_

¶ Ordered, that the Secretary deliver said bill to the Assembly and request its concurrence therein

1976

No. 4-150

(Republicans in Italics)

| Those Who Voted In the Affirmative | Those Who Voted In the Negative | Those Who Voted In the Affirmative | Those Who Voted In the Negative | Those Who Voted In the Affirmative | Those Who Voted In the Negative |
|---|---|---|---|---|---|
| Mr. Abramson | | Mr. Graber | | *Mr. Molinari* | |
| Miss Amatucci | | Mr. Grannis | | Mr. Montano | |
| Mr. Barbaro | | Mr. Greco | | *Mr. Murphy (G.A.)* | |
| *Mr. Betros* | | Mr. Griffin | | Mr. Murphy (M.J.) | |
| Mr. Bianchi | | Mr. Griffith | | *Mr. Murphy (T.J.)* | |
| Mr. Blumenthal | | *Miss Gunning* | | ~~Mr. Nucleci~~ | |
| ~~Mr. Brouwer~~ | | Mr. Haley | | Mr. Nine | |
| Mr. Brown | | *Mr. Hanna* | | *Mr. O'Neil* | |
| *Mr. Burns* | | Mr. Harenberg | | Mr. Orazio | |
| *Mr. Burrows* | | *Mr. Harris* | | Mr. Passannante | |
| Mr. Butler | | *Mr. Hawley* | | Mr. Pesce | |
| *Mr. Calogero* | | *Mr. Healey* | | Mr. Posner | |
| *Mr. Caputo* | | Mr. Hecht | | *Mr. Rappleyea* | |
| Mr. Cincotta | | *Mr. Henderson* | | *Mr. Reilly* | |
| *Mr. Cochrane* | | *Mr. Herbst* | | *Mr. Riford* | |
| Mrs. Connelly | | Mr. Hevesi | | Mr. Robach | |
| Mr. Connor | | Mr. Hinchey | | *Mr. Roosa* | |
| *Mr. Cook (C.D.)* | | Mr. Hochberg | | *Mr. Ross* | |
| ~~Mr. Cook (Lawson)~~ | | Mr. Hochbrueckner | | Mrs. Runyon | |
| Mr. Cooperman | | Mr. Hoyt | | *Mr. Ryan* | |
| Mr. Culhane | | *Mr. Hurley* | | Mr. Schmidt | |
| *Mr. Daly* | | Mr. Izard | | Mr. Schumer | |
| *Mr. D'Amato* | | ~~Mr. Jenkins~~ | | *Mr. Sears* | |
| *Mr. D'Andrea* | | *Mr. Kelleher* | | Mr. Serrano | |
| Mr. Dearie | | Mr. Kidder | | Mr. Sharoff | |
| *Mr. DelliBovi* | | Mr. Koppell | | Mr. Siegel | |
| Mr. Del Toro | | Mr. Kremer | | Mr. Silverman | |
| Mr. DeSalvio | | Mr. Landes | | *Mr. Solomon* | |
| *Mr. DiCarlo* | | *Mr. Lane* | | Mr. Stavisky | |
| Mr. DiFalco | | Mr. Lasher | | Mr. Stein | |
| ~~Mr. Dobbins~~ | | *Mr. Lee* | | *Mr. Stephens* | |
| *Mr. Dokuchitz* | | Mr. Lehner | | Mr. Stott | |
| *Mr. Duryea* | | Mr. Lentol | | Mr. Strelzin | |
| *Mr. Dwyer* | | *Mr. Levy* | | *Mr. Suchin* | |
| *Mr. Emery* | | Mr. Lewis | | *Mr. Sullivan* | |
| *Mr. Esposito* | | Mr. Lill | | Mr. Tallon | |
| ~~Mr. Eve~~ | | Mrs. Lipschutz | | *Mr. Taylor* | |
| Mr. Farrell | | Mr. Lisa | | Mr. Thorp | |
| Mr. Ferris | | *Mr. Lopresto* | | *Mr. Tills* | |
| *Mr. Field* | | *Mr. Mannix* | | Mr. Vann | |
| Mr. Fink | | Mr. Marchiselli | | *Mr. Velella* | |
| *Mr. Flack* | | ~~Mr. Marchiselli~~ | | Mr. Virgilio | |
| *Mr. Flanagan* | | *Mr. Marshall* | | Mr. Walsh | |
| Mr. Fortune | | Mr. McCabe | | *Mr. Wemple* | |
| Mr. Fremming | | *Mr. Mega* | | Mr. Weprin | |
| Mr. Frey | | Mr. Miller (G.W.) | | *Mr. Wertz* | |
| Miss Gadson | | ~~Mr. Miller (H.A.)~~ | | Mr. Yevoli | |
| ~~Mrs. Gordon~~ | | *Mr. Miller (H.M.)* | | *Mr. Zagame* | |
| Mr. Gorski | | Mr. Miller (M.H.) | | Mr. Zimmer | |
| Mr. Gottfried | | Mr. Mirto | | ~~Mr. Speaker~~ | |

AYES .......... 140 ..........

NOES .................... 0 ....................



JOHN D. CAEMMERER
7TH DISTRICT
CHAIRMAN
COMMITTEE ON TRANSPORTATION

THE SENATE
STATE OF NEW YORK
ALBANY 12224

DISTRICT OFFICE
374 HILLSIDE AVENUE
WILLISTON PARK, N.Y. 11596

May 12, 1976

Honorable Judah Gribetz
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York 12224

MAY 13 1976

Re:   Senate 7151-A

Dear Mr. Gribetz:

The purpose of this bill is to prohibit the illegal possession of an electronic dart gun.  Although this device was designed and is being manufactured and sold as a self-defense weapon, it has already been used in holdups and robberies, and it is apparent that its use must be controlled.

There are a number of these devices being manufactured, the most popular of which is called a "Taser Public Defender".  It is designed to look like a flashlight which can shoot two barbed darts a distance of 15 to 18 feet and deliver a 50,000 volt jolt of electricity effective through an inch of clothing.  While the effect of the charge is to stun, knock out or paralyze a person and is temporary, it causes great pain and may well be lethal to a person in poor health.

This bill amends Section 265.00 of the Penal Law by adding thereto a new subdivision defining the electronic dart gun and amends Section 265.01 by adding electronic dart gun, as a prohibited weapon.

For the protection of our law-abiding residents from the law-breakers who are purchasing and using this dangerous device, it is essential that Governor Carey sign this legislation.  I urge you to request the Governor's prompt approval of this bill.

Very truly yours,

JOHN D. CAEMMERER
State Senator

JDC:JMg

CALENDAR NO.  690

BILL NO.  A.  9187-A                    INTRODUCED BY:  Mr. D'Amato

   S.

AN ACT

to   amend the penal law, in relation to criminal
possession of electronic dart guns

SUMMARY OF PROVISIONS - This bill amends section 265.00 of the Penal Law by
adding thereto a new subdivision which defines an electronic dart gun.  Such
gun is defined as a device designed primarily as a weapon the purpose of which
is to momentarily stun, knock out or paralyze a person by passing an electric
shock to such person by means of a dart or other projectile.  Section 265.01 of
the Penal Law is also amended to include an electronic dart gun as a prohibited
weapon.

RATIONALE -   To prohibit the illegal possession of an electronic dart gun.

LEGISLATIVE HISTORY -

PERTINENT CONSIDERATIONS - It is noted that it has recently come to light that
there are a number of electronic devices being manufactured which can be used
as a weapon to stun, knock out or paralyze an individual.  The most popular of
these devices is called a Taser Public Defender and was designed as a self-
defense weapon.  However, such devices are extremely powerful and dangerous
and already have been used for illegal purposes.  The Taser Public Defender can
shoot two barbed darts through an inch of clothing and deliver a 50,000 volt
jolt of electricity.  Such a shock can immobilize a person for five to fifteen
minutes.
  It is further noted that if these weapons must be controlled, the penal law
must be amended to specifically outlaw their unregulated use.  This is espec-
ially true because the Federal Treasury Department has ruled that such weapons
are not firearms under the 1968 Federal Gun Control Law.  These devices have
already been used in holdups and robberies.

SENATE_____CAEMMERER

ASSEMBLY_____ *D'Amato*

*Cal. 690*

*9187*
*CODES*
*Weiy*

AN ACT to amend the penal law
in relation to criminal
possession of electronic
dart guns

## PURPOSE OF BILL

The purpose of this bill is to prohibit the illegal possession
of an electronic dart gun.

## SUMMARY OF PROVISIONS

This bill amends § 265.00 of the penal law by adding thereto a
new subdivision which defines an electronic dart gun. Such gun
is defined as a device designed primarily as a weapon the purpose
of which is to momentarily stun, knock out or paralyze a person
by passing an electric shock to such person by means of a dart
or other projectile. § 265.01 of the penal law is also amended
to include an electronic dart gun as a prohibited weapon.

## JUSTIFICATION

It has recently come to light that there are a number of electronic
devices being manufactured which can be used as a weapon to stun,
knock out or paralyze an individual. The most popular of these
devices is called a Taser Public Defender and was designed as a
self-defense weapon. However, such devices are extremely powerful
and dangerous and already have been used for illegal purposes. The
Taser Public Defender can shoot two barbed darts through an inch
of clothing and deliver a 50,000 volt jolt of electricity. Such
a shock can immobilize a person for five to fifteen minutes. It
is apparent that these weapons must be controlled and the penal
law must be amended to specifically outlaw their unregulated use.
This is especially true because the Federal Treasury Department
has ruled that such weapons are not firearms under the 1968
Federal Gun Control Law. These devices have already been used in
holdups and robberies and it is important that the Legislature
quickly adopt this bill.

## EFFECTIVE DATE

This act shall take effect September first, nineteen hundred
seventy-six.

MAY 18 1976

**NEW YORK STATE POLICE**
STATE CAMPUS
ALBANY, N.Y. 12226

WILLIAM G. CONNELIE
SUPERINTENDENT

May 14, 1976

<u>SENATE</u>                    <u>ASSEMBLY</u>                    <u>INTRODUCED BY</u>

7151-A                                                Sen. Caemmerer

<u>RECOMMENDATION</u>:    Approval

<u>STATUTE INVOLVED</u>:    Penal Law, §265.00 and 265.01

<u>EFFECTIVE DATE</u>:    September 1, 1976

<u>DISCUSSION</u>:

1.  <u>Purpose of bill</u>:

    To amend the Penal Law, in relation to criminal
    possession of electronic dart guns.

2.  <u>Summary of provisions of bill</u>:

    This bill defines an electronic dart gun and makes
    it a crime to be in possession thereof.

3.  <u>Prior legislative history of bill</u>:

    None known.

4.  <u>Known position of others respecting bill</u>:

    It can be anticipated that all police agencies would
    be in support of this bill.

5.  <u>Budget implications</u>:

    None known.

6.  <u>Arguments in support of bill</u>:

    It has been demonstrated that the electronic dart gun,
    which is capable of being carried as a concealed weapon,
    will discharge a small projectile a distance of fifteen

- 2 -

feet and through an electric conductor produce paralysis
in its victim.  This total paralysis may endure for
several minutes thus leaving the victim completely help-
less.  It would take little imagination to realize that
such weapon employed unsuspectingly on a police officer
would not only leave the police officer at the mercy of
the perpetrator but also would leave him vulnerable to
the loss of his service weapon.

7.  **Arguments in opposition to bill:**

None.

8.  **Reasons for recommendation:**

See six above.

Superintendent



STATE OF NEW YORK
OFFICE OF COURT ADMINISTRATION
270 BROADWAY
NEW YORK, NEW YORK 10007

RICHARD J. BARTLETT
STATE ADMINISTRATIVE JUDGE

MICHAEL R. JUVILER
COUNSEL

May 12, 1976

Honorable Judah Gribetz
Counsel to the Governor
Executive Chamber
Albany, New York  12224

RE:  <u>S. 7151-A</u>

Dear Mr. Gribetz:

This will acknowledge receipt of your request for comment on the above-designated legislation.

This bill defines and prohibits the possession of electronic dart guns.  The Office of Court Administration takes no position on this bill, because the decision to prohibit the possessing of these weapons is properly a substantive legislative one.

However, we point out that the definition of an electronic dart gun as a device designed to "<u>momentarily</u> stun, knock out or paralyze" appears to be an unintentionally narrow one. It would appear at least arguable that if the electrical charge could be stepped up to the point that it is apt to cause permanent injury or death, rather than momentary incapacity, the weapon would not be illegal.  We assume this is not intended and therefore suggest that if the Governor supports the objective of the bill, he seek recall or amendment in order to delete the adverb "momentarily."

We also note that, perhaps again inadvertently, the manufacture of these weapons is not prohibited by the bill. <u>Compare</u>, Penal L. §265.10(1).

Sincerely,

Michael R. Juviler

MRJ:fn

TO COUNSEL TO THE GOVERNOR

MAY 6  1976

RE:  SENATE  7151-A

ASSEMBLY

Inasmuch as this bill does not appear to involve a legal problem nor to relate to the functions of the Department of Law, I am not commenting thereon.  However, if there is a particular aspect of the bill upon which you wish comment, please advise me.

Dated: May 6, 1976                    LOUIS J. LEFKOWITZ
                                      Attorney General

STATE OF NEW YORK
**EXECUTIVE DEPARTMENT**
ECONOMIC DEVELOPMENT BOARD

# MEMORANDUM

**TO:**       Judah Gribetz                **DATE:**   May 7, 1976

**FROM:**     Alan Madian

**SUBJECT:**  Ten-day Bills - Economic Impact Statements


The following bills have been reviewed and they do not appear to have any economic impact:

                    S. 7151-A
                    S. 8241
                    S. 8583

                    A. 2387-B
                    A. 10168

B-203-(6/68)    BUDGET REPORT ON BILLS    Session Year  1976

`SENATE            NO RECOMMENDATION            ASSEMBLY

.No.   7151-A            MAY 1 0 1976          No.

Law:   Penal

Title:  An Act to amend the penal law, in relation to criminal

possession of electronic dart guns.

The above bill has been referred to the Division of the Budget for
comment.  After careful review, we find that (a) the bill does not affect
State finances in any way, (b) the bill has no appreciable effect on State
programs or administration, and (c) this office does not have the technical
responsibility to make a recommendation on the bill.

We therefore make no recommendation.

SR:jh
5/7/76

_____
Paul J. Elston, Deputy Director





STATE OF NEW YORK

DEPARTMENT OF STATE

ALBANY, N.Y. 12231

MARIO M. CUOMO
SECRETARY OF STATE

MAY 17 1976

May 14, 1976

Honorable Judah Gribetz
Counsel to the Governor
State Capitol
Albany, New York

Re:   Senate 7151-A

Dear Judah:

     This bill amends the Penal Law, in relation
to criminal possession of electronic dart guns.

     This bill does not relate to my functions
and responsibilities and I have no comments or recom-
mendations concerning same.

Sincerely,

Secretary of State

mmc:sc

P.G.

# New York State Bar Association

**CRIMINAL JUSTICE SECTION**
**COMMITTEE ON LEGISLATION**
**MEMO FROM:**
Albert M. Rosenblatt, *Co-Chairman*

*S 7151-A*
*electronic dart guns*

MAY 24 1976    May 21, 1976

**TO:** HON. JUDAH GRIBETZ
Counsel to the Governor

**SUBJECT:** Senate - 7151-A

The Criminal Justice Section of the New York
State Bar Association approves of the above cap-
tioned bill.

cc: Kent H. Brown, Esq.
Legislative Counsel


NYSBA

COURTHOUSE, POUGHKEEPSIE, NEW YORK  12601

S 7151A

LAW OFFICES

# LEVINE AND KROM

404 NORTH ROXBURY DRIVE

BEVERLY HILLS, CALIFORNIA 90210

HOWARD A. KROM
MELDON E. LEVINE
LEONARD UNGER
GEOFFREY COWAN*
ROBERT L. IVEY
——
OF COUNSEL
SID B. LEVINE
WILLIAM C. STEIN
*MEMBER D.C. BAR ONLY

AREA CODE 213
273-3555 AND 878-4848

CABLE ADDRESS
LEVKRO
—
WASHINGTON OFFICE
1523 "L" STREET, N.W.
WASHINGTON, D.C. 20005

May 20, 1976

SPECIAL DELIVERY

Judah Gribetz, Esq.
Executive Chamber
The Capitol
Albany, New York 12224

          Re: Senate Bill 7151A

Dear Mr. Gribetz:

This office represents Taser Systems, Inc., the manufacturers of a non-lethal self-defense weapon known as the Taser.

It has come to our attention within the past hour that the New York state legislature passed Senate Bill 7151A, amending Section 265 of the New York Penal Law to make the Taser a prohibited weapon. Although I have not seen the legislation yet, I have heard some of the arguments that were made in support of the bill and at least some of them are factually inaccurate. For example, the Taser is regulated by the Bureau of Alcohol, Tobacco and Firearms of the United States government, does not penetrate a person's clothing and has no meaningful kinetic force.

I am taking the liberty of forwarding herewith a package of material which describes the Taser and its operation. As you will see from this information, the Taser is not only non-lethal but is meaningfully less dangerous than any other self-defense weapon heretofore created. As persons have become more familiar with its nature and its possibilities, it has developed substantial support.

We did not have the opportunity to present our case before the state legislature or any of its relevant committees and we do not believe that the arguments in support of this device were

Judah Gribetz, Esq.
Executive Chamber
The Capitol
Albany, New York 12224

May 20, 1976 - Page Two


properly before it.  We believe, therefore, that enactment of SB7151A was premature and that its approval by the Governor would be premature.  We urge you to allow us to present our case before the legislature before legislation which so clearly affects us is enacted.

If you have any questions, please feel free to contact the undersigned in the meantime.

Very truly yours,

Meldon E. Levine
of LEVINE & KROM

MEL/jmg

The Association of the Bar of the City of New York
Committee on Criminal Courts Law and Procedure

S. 7151                                    Sen. Caemmerer

Senate Committee:   Codes

AN ACT to amend the penal law, in relation to
criminal possession of electronic guns.

The bill is disapproved.

This bill would amend Section 265.00 of the penal
law, defining an "electronic dart gun" to mean a weapon the
purpose of which is to momentarily stun, knock out or paralyze
a person by passing an electrical shock by means of a dart or
projectile.  It would then amend Section 265.01 so as to make
the possession of such an electronic dart gun a Class A mis-
deanor, that is, with a penalty equivalent in severity to that
for possession of a firearm.

The penal law already prohibits the assaultive use
of any weapon (§ 120.00),or the possession of any "dangerous
or deadly instrument or weapon with intent to use it unlawfully"
(§ 265.05.9).  This bill, therefore, would add to existing law
only by making the mere possession of an electronic dart gun,
without criminal intent, a crime equivalent to the unlicensed
possession of a firearm.  It should be noted that while current
law provides for the licensing--that is, the legalization--of
the deadly firearm, the proposed bill makes no provision for
licensing of the "stun gun."

The premise of this bill is that attaching a criminal
sanction to the possession of an electronic dart gun, or
"stun gun", will make its possession (and therefore presumably
its use) less likely.  If the criminal sanction does so operate
as a deterrent, the Committee believes that it is far more
important to deter the possession of firearms, both in themselves,
and as compared to a relatively less deadly weapon such as a
"stun gun."  Recognizing the fact that large numbers of people
in New York City possess illegal weapons, not with intent to
commit crime but because of understandable fear, it would be
at least a relative improvement if they would arm themselves
with "stun guns" as opposed to the firearms so many now possess.

The Committee believes that rather than make possession of a "stun gun" equivalent to unlicensed possession of a firearm, a sharp differentiation should be maintained between them.



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

MAY 21 1976

May 20, 1976

S.7151-A - by Mr. Caemmerer

AN ACT To amend the penal law, in
relation to criminal pos-
session of electronic dart
guns

APPROVAL RECOMMENDED

Honorable Hugh L. Carey
Governor of the State of New York
Albany, New York

Dear Governor Carey:

The above bill is before you for executive action.

This bill would amend the dangerous weapon provisions of the Penal Law to prohibit possession of electronic dart guns.

A new type of weapon is currently being used to commit robberies in New York and in other states. The gun resembles a flashlight and fires multiple barbed darts which are connected to the unit by a wire approximately eighteen feet in length. The darts are fired into the body of the victim followed by an electric charge which travels from the unit along the wires and into the body causing loss of muscular control, pain and in some cases serious physical injury.

Although the manufacturer claims that the weapon does not kill or main but only immobilizes without after effects, this claim is based on tests upon healthy young men. The unit, which is capable of producing a charge of 50,000 volts, is obviously a menance to many, particularly those with heart conditions.

Honorable Hugh L. Carey
May 20, 1976
Page Two

      The manufacturer claims that the weapon is defensive;
however, it is no more defensive than other prohibited weapons
and, in the hands of wrongdoers it is as effective as a loaded
firearm and as potentially hazardous.

      Enactment of this bill would place the electronic dart
gun in that category of weapons the mere possession of which is
illegal.

      Accordingly, I urge your approval of this bill.

            Very truly yours,

            ABRAHAM D. BEAME, Mayor

By
            Legislative Representative

To Paul Gioia
2 Pages

**The Association of the Bar of the City of New York
Committee on Criminal Courts Law and Procedure**

S. 7151                                                                Sen. Caemmerer

Senate Committee:   Codes

AN ACT to amend the penal law, in relation to
criminal possession of electronic guns.

The bill is disapproved.

This bill would amend Section 265.00 of the penal
law, defining an "electronic dart gun" to mean a weapon the
purpose of which is to momentarily stun, knock out or paralyze
a person by passing an electrical shock by means of a dart or
projectile.  It would then amend Section 265.01 so as to make
the possession of such an electronic dart gun a Class A mis-
demeanor, that is, with a penalty equivalent in severity to that
for possession of a firearm.

The penal law already prohibits the assaultive use
of any weapon (§ 120.00), or the possession of any "dangerous
or deadly instrument or weapon with intent to use it unlawfully"
(§ 265.05.9).  This bill, therefore, would add to existing law
only by making the mere possession of an electronic dart gun,
without criminal intent, a crime equivalent to the unlicensed
possession of a firearm.  It should be noted that while current
law provides for the licensing--that is, the legalization--of
the deadly firearm, the proposed bill makes no provision for
licensing of the "stun gun."

The premise of this bill is that attaching a criminal
sanction to the possession of an electronic dart gun, or
"stun gun", will make its possession (and therefore presumably
its use) less likely.  If the criminal sanction does so operate
as a deterrent, the Committee believes that it is far more
important to deter the possession of firearms, both in themselves,
and as compared to a relatively less deadly weapon such as a
"stun gun."  Recognizing the fact that large numbers of people
in New York City possess illegal weapons, not with intent to
commit crime but because of understandable fear, it would be
at least a relative improvement if they would arm themselves
with "stun guns" as opposed to the firearms so many now possess.

The Committee believes that ~~rather~~ than make possession of a "stun gun" equivalent to unlicensed possession of a firearm, a sharp differentiation should be maintained between them.

LITMAN, FRIEDMAN & KAUFMAN
ATTORNEYS AT LAW
120 BROADWAY
NEW YORK, NEW YORK 10005

MAY 17 1976

LEWIS R. FRIEDMAN
HERMAN KAUFMAN
JACK T. LITMAN

(212) 349-675

May 14, 1976

Honorable Judah Gribetz
Executive Chamber
State Capitol
Albany, New York  12224

Re:  Senate 7151-A

Dear Mr. Gribetz:

    We recommend that the above bill be disapproved.

    The bill amends Penal Law Section 265.01 to provide that possession of an "electronic dart gun" is a class A misdemeanor. The statute also seeks to define the term "electronic dart gun".

    One of the problems with the bill is that it makes possession of an "electronic dart gun" a per se crime without regard to the intent of the possessor.  In view of the difficulties with the definition of an "electronic dart gun" its mere possession should not be a per se violation.

    It is of more moment that the definition of "electronic dart gun" is not sufficiently specific and is in fact partially contradictory.  Under the proposed definition, the court would have to find the primary purpose of the design to be a "weapon".  The word "weapon" is not anywhere defined.  Then the "purpose" of the device would have to be "to momentarily stun, knock out or paralyze" the victim by the use of an electric shock.  The purpose of the "device" might be difficult to ascertain since one meaning of the word "weapon" might well be much broader or perhaps different from the prohibited "purposes" included in the statute.  Also, the electric shock which is given by an "electronic dart gun" is not actually given by the dart or projectile but by the battery contained in the handle.  Therefore it is possible that "electronic dart guns" generally will not meet the statutory definitions contained in the instant bill.

    For the foregoing reasons the bill should be disapproved.

                                    Sincerely,

                                    Lewis R. Friedman

LRF/pe

Multiple memorandum received from the
State Comptroller dated   MAY 1 2 1976

stating the following bill is of
"No Interest" to the Department of
Audit and Control.

<u>Intro. No.</u>          <u>Print No.</u>

S  //81A

The original memorandum filed with: