UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NUNZIO CALCE; ALLEN CHAN; SHAYA GREENFIELD; AMANDA KENNEDY; RAYMOND PEZZOLI; SECOND AMENDMENT FOUNDATION; and FIREARMS POLICY COALITION,<br><br>                                        Plaintiffs,<br><br>-against-<br><br>THE CITY OF NEW YORK, and DERMOT SHEA in his official capacity as Commissioner of the New York City Police Department;<br><br>                                        Defendants. | 21-cv-08208 (ER) |

# **DEFENDANTS' LOCAL RULE 56.1 STATEMENT**

        Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, Defendants the City of New York ("City"), and Dermot Shea in his official capacity as Commissioner of the New York City Police Department (collectively "Defendants") by their attorney, the Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, submit the following statement of material facts as to which Defendants contend there is no genuine issue to be tried in support of Defendants' cross-motion for summary judgment against Plaintiffs.

## **The Parties**

        1.        Plaintiff Nunzio Calce lives in Bronx, New York and would like to buy and possess a stun gun and taser to protect himself and his family both at home and in public. See Declaration of Nunzio Calce, dated February 29, 2024, ¶¶ 2, 3.

2. Plaintiff Allen Chan lives in Flushing, New York and would like to buy and possess a stun gun and taser to protect himself both at home and in public. See Declaration of Allen Chan, dated February 27, 2024, ¶¶ 2, 3.

3. Plaintiff Shaya Greenfield lives in Richmond Hill, Queens and would like to buy and possess a stun gun and taser to protect himself both at home and in public. See Declaration of Shaya Greenfield, dated February 29, 2024, ¶¶ 2, 3.

4. Plaintiff Raymond Pezzoli lives in Staten Island, New York and would like to buy and possess a stun gun and taser to protect himself both at home and in public. See Declaration of Raymond Pezzoli, dated February 29, 2024, ¶¶ 2, 3.

5. Plaintiff Amanda Kennedy lives in Bristol, Connecticut but previously resided in Brooklyn, New York. See Declaration of Amanda Kennedy, dated February 29, 2024 ("Kennedy Dec.") ¶ 2.

6. On November 16, 2021, Plaintiff Kennedy was charged with possessing a stun gun in violation of New York City Administrative Code § 10-135. See Kennedy Dec., ¶¶ 3-4.

7. On December 6, 2021, the Kings County Criminal Court issued Plaintiff Kennedy an adjournment in contemplation of dismissal. See Kennedy Dec., ¶ 7.

8. Plaintiff Second Amendment Foundation ("SAF") is a not-for-profit corporation that is organized under the laws of the State of Washington with its principal place of business located in Bellevue, Washington. See Declaration of Adam Kraut, dated March 1, 2024, ¶ 2.

9. Plaintiff Firearms Policy Coalition, Inc. is a nonprofit membership organization that is organized under the laws of the State of Delaware with its principal place

of business located in Clark County, Nevada. See Declaration of Brandon Combs, dated March 1, 2024, ¶ 2.

10. Defendant, City of New York, is a municipal corporation incorporated under the laws of the State of New York. See Defendants' Answer (Doc. No. 15), ¶ 13.

11. Defendant Dermot Shea, who is being sued in his official capacity, was the Commissioner of the New York City Police Department ("NYPD") at the time that this action was filed in 2021. See Defendants' Answer (Doc. No. 15), ¶ 15.

12. Edward Caban is the current Commissioner of the NYPD. See https://www.nyc.gov/site/nypd/about/leadership/commissioner.page [1]

**Challenged Provisions of Law**

13. In this action, Plaintiffs challenge the constitutionality of New York State Penal Law ("Penal Law") Section 265.01 and New York City Administrative Code ("Administrative Code") Section 10-135. See Plaintiffs' Statement of Undisputed Facts, ¶¶ 39, 40.

14. Penal Law § 265.01 was adopted in 1974. See Declaration of Samantha Schonfeld, dated April 26, 2024 ("Schonfeld Dec."), Ex. C.

15. Penal Law § 265.01 prohibits the possession of any electronic dart gun or electronic stun gun and provides as follows:

---

[1] Plaintiff originally named then-NYPD Commissioner Dermot Shea as a defendant in his official capacity as Commissioner of the New York City Police Department. Edward A. Caban replaced Keechant Sewell (who replaced Dermot Shea) as Commissioner of the New York City Police Department on July 17, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), the successor of a public officer is automatically substituted as a party when the originally named public officer "ceases to hold office while the action is pending."

> Section 265.01—Criminal Possession of a weapon in the fourth degree
>
> A person is guilty of criminal possession of a weapon in the fourth degree when:
>
>> (1) He or she possesses any firearm, electric dart gun, electric stun gun, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, plastic knuckles, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slungshot, shirken, or "Kung Fu star"…
>
> Criminal possession of a weapon in the fourth degree is a Class A misdemeanor.

See Schonfeld Dec., Ex. C.

16. Administrative Code § 10-135 prohibits the possession and sale of electronic stun guns and provides as follows:

> § 10-135 Prohibition on sale and possession of electronic stun guns
>
>> a. As used in this section, "electronic stun gun" shall mean any device designed primarily as a weapon, the purpose of which is to stun, render unconscious or paralyze a person by passing an electronic shock to such person, but shall not include an "electronic dart gun" as such term is defined in § 265.00 of the penal law.
>>
>> b. it shall be unlawful for any person to sell or offer for sale or to have in his or her possession within the jurisdiction of the city any electronic stun gun.
>>
>> c. Violation of this section shall be a Class A misdemeanor…

See Schonfeld Dec., Ex. D.

17. Administrative Code § 10-135 was adopted in 1985. See Schonfeld Dec., Ex. D.

**Stun Guns and Tasers**

18. An electronic stun gun is defined as "any device designed primarily as a weapon, the purpose of which is to stun, cause mental disorientation, render unconscious or paralyze a person by passing a high voltage electrical shock to such person." See Penal Law § 265.00 15(c); Declaration of Artur Edward Sadowksi, dated April 26, 2024 ("Sadowski Dec."), ¶ 4.

19. Stun guns require direct contact between the device and an individual. See Sadowski Dec., ¶ 4.

20. An electronic dart gun or "Taser" as it is commonly referred, is defined as "any device designed primarily as a weapon, the purpose of which is to momentarily stun, knock out or paralyze a person by passing an electrical current to such person by means of a dart or projectile." See Penal Law § 265.00 15(a); Sadowski Dec., ¶ 5.

21. Tasers incapacitate individuals by transmitting pulses of electric current. See Sadowski Dec., ¶ 6.

22. Tasers fire two small darts that are connected to the device with wires. See Sadowski Dec., ¶ 6.

23. Tasers were first developed in the 1960s and 1970s to be used by law enforcement as a less-lethal option to firearms. See Schonfeld Dec., Ex. B at 5-6.

24. Between 1970 and the early 2000s, seven states, including New York, enacted laws banning civilian possession of stun guns and tasers. See Schonfeld Dec., Ex. B at 6.

25. Approximately 40 localities within 15 states enacted similar restrictions on the banning of civilian possession of stun guns and tasers. See Schonfeld Dec., Ex. B at 6-7.

26. Approximately 17 states and "nearly 130 localities" imposed carry bans on stun guns and tasers. See Schonfeld Dec., Ex. B at 7.

27. Sometime in the 1990s, tasers were removed from the United States Bureau of Alcohol, Tobacco, Firearms and Explosives "firearm" category. See Schonfeld Dec., Ex. B at 7.

28. Improper use of stun guns and tasers can result in serious injury, including death. See Sadowski Dec., ¶ 7.

29. Tasers and stun guns have been "used by criminals to intimidate and even torture victims." See Schonfeld Dec., Ex. B at 27.

30. Between 2010 and 2021, "at least 513 individuals died in the U.S. as the result of being fired upon with tasers by police." See Schonfeld Dec., Ex. B at 7.

31. From 2000 through 2020 "tasers were the third leading cause of death among fatalities resulting from civilian-police encounters." See Schonfeld Dec., Ex. B at 7-8.

**Historical Regulations on Non-Firearm Weapons**

**A. Bowie Knives**

32. In the 1800s, 29 states enacted laws banning the concealed carrying of Bowie knives. See Schonfeld Dec., Ex. B at 18.

33. Fifteen states barred both open and concealed carry of Bowie knives. See Schonfeld Dec., Ex. B at 18.

34. Seven states created enhanced criminal penalties for individuals who used Bowie knives to commit criminal offenses. See Schonfeld Dec., Ex. B at 19.

35. Four states "enacted penalties for brandishing Bowie knives." See Schonfeld Dec., Ex. B at 19.

**B. Clubs and Other Blunt Weapons**

36. Every state in the United States had laws "restricting one or more types of clubs." See Schonfeld Dec., Ex. B at 20.

37. Fifteen states prohibited bludgeon carrying. See Schonfeld Dec., Ex. B at 21.

38. Sixteen states created anti-billy club laws. See Schonfeld Dec., Ex. B at 22.

39. Forty-three states enacted anti-slungshot laws. See Schonfeld Dec., Ex. B at 22.

40. In the 1800s and early 1900s, 10 states enacted anti-sandbag laws. See Schonfeld Dec., Ex. B at 23-24.

**C. Toy Guns**

41. In the 1880s, at least 19 states enacted anti-toy gun laws. See Schonfeld Dec., Ex. B at 26.

42. Between the 1800s and early 1900s, 31 states enacted anti-toy gun laws. See Schonfeld Dec., Ex. B at 26.

43. In 1995, New York City "banned black, blue and silver toy guns." See Schonfeld Dec., Ex. B at 26.

Dated: New York, New York
April 26, 2024

                            **HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street
New York, NY 100007


By: /s/ *Samantha Schonfeld*
    Samantha Schonfeld
    Assistant Corporation Counsel