# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NUNZIO CALCE; ALLEN CHAN; SHAYA GREENFIELD; AMANDA KENNEDY; RAYMOND PEZZOLI; SECOND AMENDMENT FOUNDATION; and FIREARMS POLICY COALITION, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> CITY OF NEW YORK; and DERMOT SHEA, in his official capacity as Commissioner of the New York City Police Department, <br><br> Defendants. | No. 1:21-cv-08208-ER <br><br> **AMENDED COMPLAINT** |

Plaintiffs NUNZIO CALCE; ALLEN CHAN; SHAYA GREENFIELD; AMANDA KENNEDY; RAYMOND PEZZOLI; SECOND AMENDMENT FOUNDATION; and FIREARMS POLICY COALITION, INC., by and through their undersigned counsel, as and for their Amended Complaint against Defendants CITY OF NEW YORK and DERMOT SHEA, allege as follows:

1. This § 1983 action challenges New York State and City laws that flatly prohibit private citizens from possessing or using stun guns and tasers. In *Caetano v. Massachusetts*, 577 U.S. 411 (2016), the Supreme Court vacated a conviction under a Massachusetts law that—like the New York State and City laws at issue here—flatly prohibited the possession of stun guns. Since then, most courts have found that bans on stun guns and tasers violate the Second Amendment and are unconstitutional. *See, e.g., People v. Webb*, 131 N.E.3d 93, 98 (Ill. 2019); *Ramirez v. Commonwealth*, 94 N.E.3d 809, 818 (Mass. 2018). In *Avitabile v. Beach*, 368 F. Supp. 3d 404 (N.D.N.Y. 2019,) the court found the State's ban on stun guns and tasers unconstitutional and enjoined the State Police from enforcing it, *see id.* at 421.

2. Notwithstanding this, the City of New York continues to enforce the State and City laws that prohibit the possession of stun guns and tasers. Among other things, the City and Commissioner Shea continue to train officers that stun guns and tasers are illegal under State and City law and to instruct them to bring charges against individuals found in possession of them. NYPD officers continue to arrest and/or summons individuals they find to be in possession of them, such as Plaintiff Amanda Kennedy. And, when the other individual Plaintiffs—Nunzio Calce, Allen Chan, Raymond Pezzoli and Shaya Greenfield—contacted their local NYPD precincts to inquire, NYPD officers told each of them that stun guns and tasers are illegal.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

4. This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under the color of laws of the City and/or State of New York and/or within the geographic confines of the State of New York.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1). Local Civil Rule 18(a) designates the Manhattan Courthouse.

## PARTIES

6. Plaintiff Nunzio Calce is a citizen and resident of the State of New York residing in the Bronx.

7. Plaintiff Allen Chan is a citizen and resident of the State of New York residing in Flushing (Queens).

8. Plaintiff Shaya Greenfield is a citizen and resident of the State of New York residing in Kew Gardens (Queens).

9. Plaintiff Amanda Kennedy is a citizen and resident of the State of New York residing in Brooklyn (Kings).

10. Plaintiff Raymond Pezzoli is a citizen and resident of the State of New York residing in Staten Island.

11. Plaintiff Second Amendment Foundation ("SAF") is a non-profit member organization incorporated under the laws of the State of Washington with its principal place of business in Bellevue, Washington (King County).

12. Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California (Sacramento County).

13. Defendant City of New York is a municipal corporation incorporated under the laws of the State of New York.

14. The New York City Police Department (or "NYPD") is an agency of the City of New York that is not amenable to suit in its own name.

15. Defendant Dermot Shea is sued in his official capacity as Commissioner of the New York City Police Department, responsible for administering and executing the laws, policies, customs and practices complained of. As alleged herein, Defendant Commissioner Shea actively threatens to enforce the challenged laws, policies, customs and practices against the Plaintiffs. Commissioner Shea has his office in the County of New York.

### CONSTITUTIONAL PROVISIONS

16. The Second Amendment provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

17. The Fourteenth Amendment provides in pertinent part:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

## PERTINENT NEW YORK STATE LAWS

18. Penal Law § 265.01 prohibits the possession of stun guns and tasers as follows:

Section 265.01 – Criminal possession of a weapon in the fourth degree

A person is guilty of criminal possession of a weapon in the fourth degree when:

(1) He or she possesses any firearm, *electronic dart gun*, *electronic stun gun*, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, plastic knuckles, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slungshot, shirken, or "Kung Fu star"; . . .

Criminal possession of a weapon in the fourth degree is a Class A misdemeanor. [emphasis added]

19. The Penal Law defines an "electronic dart gun" (i.e. "taser") as "any device designed primarily as a weapon, the purpose of which is to momentarily stun, knock out or paralyze a person by passing an electrical shock to such person by means of a dart or projectile." Penal Law § 265.00(15-a).

20. The Penal Law defines an "electronic stun gun" as "any device designed primarily as a weapon, the purpose of which is to stun, cause mental disorientation, knock out or paralyze a person by passing a high voltage electrical shock to such person." Penal Law § 265.00(15-c).

21. There is no exception from the Penal Law's prohibition on stun guns and tasers that applies to a normal private citizen. For example, a handgun license does not authorize the possession of stun guns or tasers. *See* Penal Law § 265.20(3).

22. New York City Administrative Code § 10-135 prohibits the possession of stun guns as follows:

> § 10-135 Prohibition on sale and possession of electronic stun guns.
>
> a. As used in this section, "electronic stun gun" shall mean any device designed primarily as a weapon, the purpose of which is to stun, render unconscious or paralyze a person by passing an electronic shock to such person, but shall not include an "electronic dart gun" as such term is defined in section 265.00 of the penal law.
>
> b. It shall be unlawful for any person to sell or offer for sale or to have in his or her possession within the jurisdiction of the city any electronic stun gun.
>
> c. Violation of this section shall be a class A misdemeanor. . . .

23. There is no exception from the Administrative Code's prohibition on stun guns that applies to a normal private citizen. The Administrative Code provides exceptions police officers, manufacturers, importers, exporters and merchants, but not for ordinary private citizens. *See* N.Y.C. Admin. Code § 10-135(d)-(e).

24. A Class A misdemeanor carries a maximum term of imprisonment of 364 days months and a maximum fine of $1,000. *See* Penal Law §§ 70.15(1), 80.05(1).

### DEFENDANTS' APPLICATION AND THREATENED APPLICATION OF THE CHALLENGED LAWS TO THE PLAINTIFFS

25. Plaintiff Nunzio Calce would like to purchase and possess either a stun gun or a taser for the purpose of protecting himself both at home and in public, in all places he is otherwise allowed to have and carry a weapon.

-5-

26. Mr. Calce is an adult who has never been convicted of a felony or confined to a mental institution. Mr. Calce would comply with any reasonable regulations that were imposed as a requirement of purchasing and possessing a stun gun or taser.

27. On September 7, 2021, Mr. Calce contacted his local NYPD precinct (49th) in the Bronx and asked whether it was lawful for him to have a stun gun or a taser in New York City. Officer Ju told him that both stun guns and tasers are illegal in all of New York City. Officer Ju further told Mr. Calce that his superiors would tell Mr. Calce the same thing, as would any superior officer at any other NYPD precinct.

28. Plaintiff Allen Chan would like to purchase and possess either a stun gun or a taser for the purpose of protecting himself both at home and in public, in all places he is otherwise allowed to have and carry a weapon.

29. Mr. Chan is an adult who has never been convicted of a felony or confined to a mental institution. Mr. Chan would comply with any reasonable regulations that were imposed as a requirement of purchasing and possessing a stun gun or taser.

30. On several days in September and October of 2021, Mr. Chan contacted his local NYPD precinct (109th) in Flushing, Queens to ask whether it was lawful for him to have a stun gun or a taser in New York City. Mr. Chan left a number of messages, which were not returned. Finally, on the evening of October 28, 2021, Mr. Chan called the number for the 109th precinct's Detective Squad and was able to speak with an officer. The officer told Mr. Chan that stun guns and tasers are illegal in New York City, but that he was not sure whether they were illegal under New York State law.

31. Plaintiff Shaya Greenfield would like to purchase and possess either a stun gun or a taser for the purpose of protecting himself both at home and in public, in all places he is otherwise allowed to have and carry a weapon.

32. Mr. Greenfield is an adult who has never been convicted of a felony or confined to a mental institution. Mr. Greenfield would comply with any reasonable regulations that were imposed as a requirement of purchasing and possessing a stun gun or taser.

33. On several days in September 2021, Mr. Greenfield contacted his local NYPD precinct (102nd) in Kew Gardens, Queens to ask whether it was lawful for him to have a stun gun or a taser in New York City. Notwithstanding repeated attempts, no one answered the general precinct phone number when Mr. Greenfield called. Finally, on September 27, 2021, at approximately 1:20 p.m., Mr. Greenfield called the precinct's detective squad and spoke with an individual who told him it was illegal to have a taser in New York City.

34. Plaintiff Amanda Kennedy would like to purchase and possess either a stun gun or a taser for the purpose of protecting herself both at home and in public, in all places she is otherwise allowed to have and carry a weapon.

35. Ms. Kennedy is an adult who has never been convicted of a felony or confined to a mental institution. Ms. Kennedy would comply with any reasonable regulations that were imposed as a requirement of purchasing and possessing a stun gun or taser.

36. Previously, Ms. Kennedy had a stun gun that she had purchased when she lived in California. On November 16, 2021, Ms. Kennedy was driving her car in Brooklyn, in traffic, when a pedestrian accused her of blocking a crosswalk, struck both Ms. Kennedy's car (causing a dent) and her face (causing swelling) and tried to open the door of her car. Ms. Kennedy showed the woman her stun gun, told the woman to stop and attempted to leave. Officers with

-7-

the New York City Police Department responded, and when they learned that Ms. Kennedy had a stun gun, they seized the stun gun and charged Ms. Kennedy with violating N.Y.C. Admin. Code § 10-135. On December 6, 2021 the New York and Kings County Criminal Court granted Ms. Kennedy an adjournment in contemplation of dismissal.

37. Plaintiff Raymond Pezzoli would like to purchase and possess either a stun gun or a taser for the purpose of protecting himself both at home and in public, in all places he is otherwise allowed to have and carry a weapon.

38. Mr. Pezzoli is an adult who has never been convicted of a felony or confined to a mental institution. Mr. Pezzoli would comply with any reasonable regulations that were imposed as a requirement of purchasing and possessing a stun gun or taser.

39. On August 10, 2021, Mr. Pezzoli contacted his local NYPD precinct (120th) in Staten Island and spoke with Detective Cayenne (sp.) of the Detective's Squad. Mr. Pezzoli asked whether it was lawful for him to have a stun gun in New York City, and Detective Cayenne immediately responded that it was not legal.

40. In light of the unambiguous language of Penal Law § 265.01(1) and Administrative Code § 10-135, and the advice they received when they contacted their local NYPD precincts for input, Plaintiffs Calce, Chan, Greenfield and Pezzoli all refrain from possessing or using stun guns and tasers in the City of New York. Furthermore, in light of the unambiguous language of Penal Law § 265.01(1) and Administrative Code § 10-135, as well as because NYPD officers have in fact charged her with violating Administrative Code § 10-135 on account of a stun gun, Plaintiff Kennedy refrains from possessing or using a stun gun or taser in the City of New York. Each of these individuals is afraid that NYPD officers will arrest and/or summons them if they possess a stun gun or a taser. Aside from asking NYPD whether the

conduct they would like to engage in is lawful, as they have done, there is no other means realistically available to them to determine whether they would be arrested and/or summonsed, aside from violating the law and being subjected to prosecution (as happened with Ms. Kennedy).

41. Plaintiff SAF has over 650,000 members and supporters nationwide, including in the City and State of New York. The purposes of SAF include promoting both the exercise of the right to keep and bear arms and education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms. SAF also promotes research and education on the consequences of abridging the right to keep and bear arms and on the historical grounding and importance of the right to keep and bear arms as one of the core civil rights of United States citizens.

42. The purposes of FPC include defending and promoting the People's rights, especially but not limited to the Second Amendment right to keep and bear arms, advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs.

43. Members have contacted both SAF and FPC to ask questions obtaining licenses to possess stun guns and tasers in New York City. In response, representatives of SAF and FPC have spent time, money and other resources answering questions and providing advice. Furthermore, members of both SAF and FPC may face criminal charges or other adverse action in the future on account of the allegation that they violated N.Y. Penal Law § 265.01(1) and/or Administrative Code § 10-135. SAF and FPC may in that instance provide individuals with support in the form of advice and referrals to counsel. Among other things, FPC helped pay the

costs of Plaintiff Amanda Kennedy's criminal defense. All of these actions deplete the time, energy and money of SAF and FPC and their representatives and prevent SAF and FPC and their representatives from spending their time, energy and money to pursue other organizational objectives. Furthermore, it is difficult or impossible to calculate the actual monetary "cost" of lost opportunities.

44. SAF and FPC join this action to redress discernable impacts that the challenged laws, policies and practices cause to themselves, as well as, to the extent they are able,[1] on behalf of their members who seek to exercise their right to bear arms.

## CAUSE OF ACTION FOR DEPRIVATION OF CIVIL RIGHTS UNDER COLOR OF LAW

45. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). It is "fully applicable to the States." *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *accord Caetano v. Massachusetts*, 577 U.S. 411, 411 (2016).

46. "[T]he core lawful purpose" of the Second Amendment is "self-defense." *Heller*, 554 U.S. at 630; *see also id.* at 592, 599; *see also McDonald*, 561 U.S. at 767.

47. While states and localities have some ability to regulate the keeping and bearing of arms, the Second Amendment prohibits states and localities from flatly prohibiting law-abiding citizens from keeping bearable arms, and particularly arms that are in common use for the purpose of self-defense.

---

[1] Under Second Circuit precedent, organizations do not have associational standing in § 1983 actions. *See, e.g., Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). Here, however, this is irrelevant. "It is well settled that where, as here, multiple parties seek the same relief, 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'" *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (*quoting Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) (other citation omitted)).

48. Stun guns and tasers are bearable arms, and further, they are in common use for the purpose of self-defense. Indeed, the Superintendent of the New York State Police stipulated in litigation that hundreds of thousands of tasers and millions of stun guns are owned by private citizens in the United States. Those numbers undoubtedly have increased since that stipulation was made. Electric arms such as stun guns and tasers are legal for private citizens to possess in the vast majority of the states. *See Avitabile*, 368 F. Supp.3d at 412 ("[F]orty-seven states now permit the use and possession of electric arms with or without some form of attendant regulation.").

49. By enforcing and threatening to enforce Penal Law § 265.01(1) and Administrative Code § 10-135 in respect of stun guns and tasers, Defendants City of New York and Commissioner Shea, by their laws, policies, customs and practices, cause the injuries complained of in this action. Specifically, by enforcing and threatening to enforce Penal Law § 265.01(1) and Administrative Code § 10-135 in respect of stun guns and tasers, Defendants City of New York and Commissioner Shea cause Plaintiffs Calce, Chan, Greenfield, Kennedy and Pezzoli, as well as members of SAF and FPC, to refrain from possessing and using stun guns and tasers, and further, Defendants cause the use of the resources of SAF and FPC as complained of above.

50. Defendants, having acted under color of law, policy, custom or practice to subject the Plaintiffs to the deprivation of their right to bear arms, are liable under 42 U.S.C. § 1983 "in an action at law, suit in equity, or other proper proceeding for redress[.]"

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

   i. a declaratory judgment that N.Y. Penal Law § 265.01(1) has no plainly legitimate sweep and is unconstitutional in all applications, or alternatively, is unconstitutional as-applied, to the extent it precludes

        typical law-abiding individual from possessing or using stun guns and tasers;

  ii.    a declaratory judgment that N.Y.C. Administrative Code § 10-135 has no plainly legitimate sweep and is unconstitutional in all applications, or alternatively, is unconstitutional as-applied, to the extent it precludes typical law-abiding individual from possessing or using stun guns;

  iii.    a preliminary and/or permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice, from enforcing N.Y. Penal Law § 265.01(1) in respect of stun guns and tasers, and from enforcing N.Y.C. Administrative Code § 10-135;

  iv.    such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

  v.    attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Dated: New York, New York
       December 22, 2021

                                  DAVID JENSEN PLLC

                                  By: *[signature]*
                                      David D. Jensen, Esq.
                                33 Henry Street
                                Beacon, New York 12508
                                Tel: 212.380.6615
                                Fax: 917.591.1318
                                david@djensenpllc.com
                                *Attorney for Plaintiffs*